IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| KEITH BURTON THOMAS and ) | BK06-81921-TJM |
| PATRICIA ANN THOMAS, ) | A07-8014-TJM |
| ) | |
| Debtor(s). ) | CH. 7 |
| BANK OF BENNINGTON, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | |
| ) | |
| KEITH BURTON THOMAS and ) | |
| PATRICIA ANN THOMAS, ) | |
| ) | |
| Defendant(s). ) | |

MEMORANDUM OPINION

Trial was held in Omaha, Nebraska, on April 21, 22, 23, 24, 2009, on the complaint filed by Bank of Bennington. James B. Cavanagh appeared for Bank of Bennington and Matthew S. McKeever appeared for Keith and Patricia Thomas. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I) and (J).

Introduction

The Bank of Bennington brought this adversary proceeding against Keith and Patricia Thomas alleging they should be denied a discharge under 11 U.S.C. § 727, and specifically with regard to debtor Keith Thomas under § 727(a)(2), (3), (4), (5), (6), and (7). With regard to Patricia Thomas, the bank asserts that certain assets and transfers of property were not identified on the schedules, amended schedules, or statement of financial affairs; that information provided at the § 341 meeting was inaccurate; and, because she signed the schedules and statement of financial affairs under penalty of perjury, she should be denied a discharge. In addition, and in the alternative, the bank asserts that the obligation represented by notes and guarantees executed by Keith Thomas in favor of the bank should not be discharged under the statutory authority of § 523(a)(2), (4) and (6).

Judgment shall be entered in favor of Patricia Thomas and her obligations to the bank shall be discharged. There is no evidence in this record that Mrs. Thomas knew of the dates or the amounts received from the settlement of a lawsuit in favor of Keith Thomas, nor the dates or the recipients of the distribution of the proceeds of the settlement. Similarly, although Mrs. Thomas admits she knew the family would receive some federal tax refunds, there is no evidence that she was aware of the amount, the date received, or anything about the distribution of the funds.

With regard to Mr. Thomas, a judgment will be entered in favor of the bank and Mr. Thomas will be denied a discharge. Concerning the § 523 allegations against Mr. Thomas, judgment will be entered in favor of Mr. Thomas.

Findings of Fact Concerning §523 Issues

      Mr. and Mrs. Thomas and their son, Timothy Thomas, and his spouse, were the owners of the stock of several corporations. Tim was the president of Papiotrade, a company that acted as a wholesale distributor or broker of tobacco products. He was in charge of the day-to-day operations of the company and oversaw sales, accounting, and distribution of the product. Keith had an office in the same building as the operations of Papiotrade, and had overall responsibility for the success of Papiotrade and the several other companies that he was involved with.

      The following uncontroverted facts in paragraphs (a) through (f) are taken from the preliminary pretrial statement:

      a. The Bank of Bennington is a creditor in these bankruptcy proceedings.

      b. Keith Thomas and his son, Timothy Thomas, along with their respective wives, held all or substantially all of the issued and outstanding shares or ownership interest in multiple companies including but not limited to the following: Four T Corporation; Sceptre Storage, L.L.C.; and Four T Companies. Keith Thomas and his spouse, Patricia, owned the stock of Knotrub, Inc., Walpeace L.L.C., and Cloud 9 Products L.L.C. Four T Companies acted as a holding company which held the ownership interest in other entities including Papiotrade, Inc. ("Thomas Entities"). The Thomas Entities engaged in various activities including retail and wholesale operations and sale of inventory. Papiotrade, Inc. engaged in the sale of tobacco products.

      c. On or about December 12, 2002, a Promissory Note in the original principal amount of $4,000,000 was executed and delivered by the Debtors, the Timothy Thomas Family and certain of the Thomas Entities. Under the terms of this Note, the Debtors and the Thomas Entities were extended a line of credit based upon a borrowing base which included inventory, receivables and other collateral. To access the line of credit, the Thomas Entities were required to submit monthly Borrowing Base Certificates to the bank which were to completely and accurately reflect the assets of Papiotrade and the other companies owned by Keith and Patricia Thomas.

      d. At all times, Keith Thomas and Timothy Thomas were control persons of all of the Thomas Entities and were responsible for submission of all financial information and records to the bank as well as all aspects of the operations of the Thomas Entities. Keith Thomas controlled the financial affairs of the Thomas Entities. The monthly Borrowing Base Certificate was submitted to the bank by the Chief Financial Officer, Dan Kraft.

      e. On or about March 27, 2004, Four T Companies, Inc. executed and delivered to the bank a Promissory Note in the original principal amount of $400,000. This Note was executed by or guaranteed by the Debtors and the Thomas Entities. In connection with the Four T Companies' Note, the Debtors caused to be submitted to the bank certain financial information and documents.

      f. Monthly Borrowing Base Certificates were submitted by Papiotrade to the bank.

These Borrowing Base Certificates were usually reviewed and approved by Keith Thomas and Tim Thomas prior to submission to the bank.

The Borrowing Base Certificate referred to above showed the value of inventory, state cigarette tax stamps, accounts receivable, cash and miscellaneous assets. The bank relied upon the accuracy of the certificate when the loan officers reviewed the loan and decided whether or not to allow the companies to continue to borrow.

In late 2004, the Borrowing Base Certificate was insufficient to cover the outstanding loan amount. The bank offset $176,000 from the bank account of Papiotrade. Even with the offset, the borrowing base was not sufficient. Bank officers met with Keith Thomas and Tim Thomas on several dates in December of 2004 and January of 2005, and emphasized each time that the borrowing base was required to be in balance.

On January 20, 2005, bank officers met with Keith Thomas and Tim Thomas and told them that if the certificate due for the month of January did not show sufficient assets, the bank would take appropriate action to shut down the lending relationship. In response, Tim Thomas attempted to motivate his sales force to make more sales during the next 10 days which could be converted into accounts receivable. However, on January 28, 2005, the Chief Financial Officer did a draft pro forma Borrowing Base Certificate which showed the borrowing base was a million dollars short of what was needed to satisfy the bank. January 28, 2005, was a Friday. Dan Kraft, the Chief Financial Officer who prepared the draft, was ill on the next business day, Monday, January 31, 2005. Tim Thomas requested Rhonda DeVries, an accountant who worked with Dan Kraft, to monitor sales, accounts receivable, inventory and cash on that Monday and prepare a draft certificate during the day. She monitored the assets all day long and informed Tim Thomas and Keith Thomas throughout the day of the status of the assets.

At 5:00 p.m., the close of business, the assets still were insufficient to meet the borrowing base requirements. Tim Thomas told her to keep the books open and that he and others would continue working on sales throughout the evening. The next morning, based upon invoices representing sales made on Monday night, a new Borrowing Base Certificate was prepared which showed that the assets were sufficient to meet the requirements of the bank. That certificate was provided to the bank. Based upon it and subsequent certificates, the bank continued to provide credit. Certificates submitted for January through March 2005 reflected most of the accounts receivable from the sales invoices prepared on the evening of January 31, 2005.

The sales invoices representing the sales on the evening of January 31, 2005, were never sent to the alleged purchasers. Each one of the invoices was backed out of the accounting system between mid-February and the end of April 2005. Neither Tim Thomas nor Keith Thomas informed the bank that the sales and accounts receivable that appeared on the borrowing base certificates and monthly financial statements did not represent actual sales or accounts receivable.

After the end of January 2005, actual sales apparently did increase, thereby enabling the January 31, 2005, invoices to be backed out of the system and still meet the borrowing base requirements during most of the rest of the year. However, the bank was still extremely concerned about the financial condition of the company and worked with Tim Thomas and Keith Thomas to transfer the majority ownership of the company to an investor. In November of 2005, the new majority owner contacted Tim Thomas and Keith Thomas and explained that a review of the accounting records of the company showed a significant error in accounts receivable for June 2005.

The error was apparently based upon one or more sales invoices which did not accurately represent completed sales and which were not backed out of the system. Tim Thomas and Keith Thomas met with the president of the bank and explained the error and apologized for the error. They did not, however, explain that this was not the first time receivables were listed which did not accurately represent completed sales.

Eventually, Papiotrade and the other companies closed and after liquidation of the collateral a significant amount of the debt remains.

Conclusions of Law and Discussion of § 523 Issues

Keith Thomas and Patricia Thomas are makers of the notes and guarantors of the companies' debt to the bank. The bank's position is that Keith Thomas's obligation should not be discharged under 11 U.S.C. § 523(a)(2)(A) or (B).[1]

Section 523(a)(2)(A) deals with the dischargeability of debts which were incurred under false pretenses, a false representation, or actual fraud, other than a statement concerning an insider's financial condition. "Insider" is defined at 11 U.S.C. § 101(31)(A)(iv): If the debtor is an individual, "insider" includes a corporation of which the debtor is a director, officer, or person in control. Keith Thomas was a director, officer, and person in control of Papiotrade and the other entities which were a party to the loan. Since the Borrowing Base Certificate and the financial statements of the corporations concern the corporations' financial condition, 11 U.S.C. § 523(a)(2)(A) is not applicable.

However, § 523(a)(2)(B) would be applicable if Keith Thomas caused the Borrowing Base Certificate or the monthly financial statements to be published with intent to deceive. The statements were in writing, materially false, respecting the insider's financial condition on which the bank reasonably relied.

The evidence is insufficient on the issue of Keith Thomas's knowledge of the falsity of the

---

[1]That section provides:
   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt —
      . . .
      (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —
         (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
         (B) use of a statement in writing —
            (i) that is materially false;
            (ii) respecting the debtor's or an insider's financial condition;
            (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
            (iv) that the debtor caused to be made or published with intent to deceive[.]

Borrowing Base Certificates submitted for January 2005 through March 2005.

Although Keith Thomas was in overall charge of the various entities, including Papiotrade, he did not have day-to-day involvement in reviewing or preparing the Borrowing Base Certificates or the financial statements. He did not sign the Borrowing Base Certificates. On January 31, 2005, the testimony of Rhonda DeVries, the employee monitoring the financial situation, is that he was present in his office in the building and was kept up to date with regard to the numbers. However, there is no testimony and no other evidence showing that he was involved in the alleged sales on the evening of January 31, 2005, the preparation of the apparently false invoices, or the preparation of the Borrowing Base Certificate which included accounts receivable based upon the false invoices. The bank, in its post-trial brief, suggests that Rhonda DeVries testified that at the management meeting held the morning of February 1, 2005, Keith Thomas participated in a discussion about the false invoices. However, on the recording of the trial, it is clear that she testified she did not recall if she was in the meeting on that date. Her testimony about the discussion of the invoices did not indicate the date of the discussion, nor identify Keith Thomas as having participated in the discussion.

There is plenty of evidence that Tim Thomas was involved in all of it. He was responsible for creating the invoices, directing that they not be mailed, that there be no collection activity on them and eventually causing the false accounts receivables to be backed out of the accounting system to correct the Borrowing Base Certificate and the financial statement. His explanation of what occurred or could have occurred to cause the accounts receivable to be backed out of the accounting system is not to be believed. The employees in the accounting department all testified that he was involved in creating the sales, creating the invoices, ordering the collection department to refrain from attempting collection, and finally directing the accounts receivable to be reversed. The reversals were initiated only when Dan Kraft suggested that an audit would occur at the end of April or early May and that the auditors would find the erroneous accounts receivable.

A debtor cannot be charged with vicarious liability under 11 U.S.C. § 523(a)(2)(B) without evidence the debtor actually caused the misstatement concerning financial condition to be published with intent to deceive. <u>Alden State Bank v. Anderson (In re Anderson)</u>, 29 B.R. 184 (Bankr. N.D. Iowa 1983). None of the evidence ties the debtor, Keith Thomas, to the presentation of the Borrowing Base Certificate or financial statement with knowledge of their falsity and intent to deceive the bank. The fact that he was in overall charge of the corporations does not naturally lead to an inference concerning his knowledge of the falsity of the statements or his intent to deceive the bank.

<u>11 U.S.C. § 523(a)(4)</u>

The adversary complaint alleges that the obligation owed by Keith Thomas should be found non-dischargeable under 11 U.S.C. § 523(a)(4).[2] However, no evidence was presented that Keith

---

[2]That sections states:
    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt —
    . . .
        (4) for fraud or defalcation while acting in a fiduciary capacity,
(continued...)

Thomas was in a fiduciary relationship with the bank, embezzled any funds from the bank or from the corporations he was involved in, and there is no evidence of larceny.

11 U.S.C. § 523(a)(6)[3]

The bank asserts that Keith Thomas's obligation to the bank should be determined to be non-dischargeable because he caused the false financial information to be provided to the bank, thereby encouraging the bank to extend the loans. Such extension enabled him to remove from the company accounts at least $90,000 between February and May of 2005. In addition, he apparently withdrew funds from other companies which were parties to the loan. Conversion of collateral, such as cash, may be the basis for a finding of non-dischargeability under § 523(a)(6), but the evidence is not sufficient in this case to make such a finding. First, as discussed above, the evidence presented was not convincing as to Keith Thomas's knowledge of the falsity of the accounts receivable numbers placed on the Borrowing Base Certificate. As mentioned above, it therefore follows that he could not be found to have intentionally deceived the bank. Without such findings, the claim under § 523(a)(6) must fail.

Findings of Fact, Conclusions of Law, and Discussion of §727(a)(4)(A) Issue

In addition to requesting the court to enter an order of non-dischargeability under § 523(a), the bank's complaint asserts that the debtors should be denied a discharge because they made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A).[4] As discussed at the beginning of the opinion, there is insufficient evidence with regard to Mrs. Thomas's knowledge and understanding of the dates on which certain settlement monies were received and transferred and no evidence concerning her knowledge of the $90,000 that Keith Thomas received in several checks from Papiotrade in February and May of 2005. Therefore, judgment will be entered in her favor.

When the debtors filed their bankruptcy petition in late 2006, they filed schedules and a document entitled Statement of Financial Affairs. Although they had received a $397,000 tax refund within the year prior to filing the petition, that tax refund was not disclosed on the original statement. A loan in the amount of $150,000 from the wife of a relative of Keith's and its repayment, both of

---

[2](...continued)
embezzlement, or larceny[.]

[3]That section states:
    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt —
    . . .
    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

[4]That section provides:
    (a) The court shall grant the debtor a discharge, unless —
    . . .
    (4) the debtor knowingly and fraudulently, in or in connection with the case —
        (A) made a false oath or account[.]

which occurred within two years of the petition date, were not included on the original statement. State tax refunds of $56,000 were not disclosed on the original statement.

At the § 341 meeting, counsel for the bank brought these matters to the attention of the debtors and, shortly thereafter, the statement was amended to reflect the various tax refunds and the loan and repayment.

At the § 341 meeting, Keith Thomas, after being reminded of the above-listed matters, testified that there were no other oversights and that the statement and schedules were accurate but for the tax refunds and the loan. However, that testimony was incorrect. In December of 2004, Keith Thomas entered into a settlement of a lawsuit and was to be paid $500,000 as settlement. He received $350,000 in December of 2004 and $150,000 in March of 2005. Neither the settlement itself nor the payment were disclosed in Item 2 of the original statement nor in the amended statement. Neither were they disclosed at the § 341 meeting.

The settlement agreement itself provided it was being paid to Keith Thomas for services rendered to the defendant in the case. The complaint in the lawsuit alleged that the defendant had deprived Keith Thomas of income from services he had rendered to the company. Neither the $350,000 payment nor the $150,000 payment were listed as income on the schedules nor on the original or amended statement of affairs.

Keith Thomas received checks totaling $90,000 from Papiotrade in February and May of 2005. The payments were not disclosed on the original statement or the amended statement and were not disclosed at the § 341 meeting. In addition, these payments appear to be income to Keith Thomas. There is no promissory note representing any type of borrowing by Keith Thomas from Papiotrade and there is no reduction in the line item on the financial statements showing loans from shareholders, so the payments did not represent a pay-down of a debt owed by Papiotrade to Keith Thomas. These unexplained transfers occurred at a time when Papiotrade was in serious financial difficulty as described above. The $90,000, although paid to Keith Thomas within two years of the petition date, was not disclosed on any of the bankruptcy documents.

From December 2004 through January 2006, tens of thousands of dollars were deposited in the personal account of the debtors at Wells Fargo Bank. Mr. Thomas testified that much of the money came from the settlement referred to above and the tax refunds. Other deposits were from his various entities. None of the deposits, some of which must have been income to Keith Thomas, were listed on the original statement or the amended statement. In addition, hundreds of thousands of dollars were transferred out of the Wells Fargo account between December 2004 and January 2006. At trial, Mr. Thomas presented a document and testified concerning it in an attempt to explain where the money went. His testimony is that when he received the settlement, he immediately distributed it to the entities. The transfers of those personal funds were not disclosed on the original statement or the amended statement.

Section 727(a)(4) of the Bankruptcy Code denies a debtor a discharge if, in or in connection with the case, he or she knowingly and fraudulently made a false oath or account. A false oath bars discharge in bankruptcy if it is both material and made with an intent to defraud. <u>Jordan v. Bren (In re Bren)</u>, 122 Fed. Appx. 285, 286 (8th Cir. 2005) (citing <u>Korte v. Internal Revenue Serv. (In re Korte)</u>, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001)).The signature of the debtor on the petition, schedules and statement of financial affairs is an averment under oath that the information presented on those documents is accurate and a truthful statement of the financial condition of the

debtor on the petition date. First State Bank v. Beshears (In re Beshears), 196 B.R. 468, 476 (Bankr. E.D. Ark. 1996); Fed. R. Bankr. P. 1008 ("All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.") Failure to accurately disclose financial transactions can be grounds for denial of a discharge for making a false oath. Smith v. Cooper (In re Cooper), 399 B.R. 637 (Bankr. E.D. Ark. 2009).

The creditor must show that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement to be false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case. Taylor v. Montgomery (In re Montgomery), 309 B.R. 563, 567 (Bankr. W.D. Mo. 2004) (citing Sholdra v. Chilmark Fin'l L.L.P. (In re Sholdra), 249 F.3d 380, 382 (5th Cir. 2001)). The threshold of materiality is fairly low. Cepelak v. Sears (In re Sears), 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000). A matter is "material" if it concerns the discovery of assets or the existence and disposition of estate property. Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992); Ellsworth v. Bauder (In re Bauder), 333 B.R. 828, 830 (B.A.P. 8th Cir. 2005).

Debtors are required to provide complete, accurate, and reliable information at the commencement of the case so that all parties may adequately evaluate the case and the estate's property may be appropriately administered. Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987). Courts often will tolerate a single omission or error resulting from innocent mistake. However, omissions of a "sizable nature" suggest recklessness, Bren at 288, and multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive.  See In re Chavin, 150 F.3d 726, 728 (7th Cir. 1998) ("Chavin concedes . . . that not caring whether some representation is true or false — the state of mind known as 'reckless disregard' — is, at least for purposes of the provisions of the Bankruptcy Code governing discharge, the equivalent of knowing that the representation is false and material."); Beaubouef v. Beaubouef (In re Beaubouef), 966 F.2d 174, 178 (5th Cir. 1992) ("[T]he existence of more than one falsehood, together with [the debtor's] failure to take advantage of the opportunity to clear up all inconsistencies and omissions when he filed his amended schedules, constituted reckless indifference to the truth and, therefore, the requisite intent to deceive."); Tully, 818 F.2d at 112 (citing Diorio v. Kreisler-Borg Constr. Co. (In re Diorio), 407 F.2d 1330, 1331 (2d Cir. 1969)) ("Statements called for in the schedules, or made under oath in answer to questions propounded during the bankrupt's examination or otherwise, must be regarded as serious business; reckless indifference to the truth . . . is the equivalent of fraud."); Korte, 262 B.R. at 474 (quoting Golden Star Tire, Inc. v. Smith (In re Smith), 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993)) ("[S]tatements made with reckless indifference to the truth are regarded as intentionally false."); Hamo v. Wilson (In re Hamo), 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999) ("[A] knowingly false statement or omission made by the Debtor with reckless indifference to the truth will suffice as grounds for the denial of a Chapter 7 general discharge."); Dean v. McDow, 299 B.R. 133, 140 (E.D. Va. 2003) ("While any single omission or error may be the result of an innocent mistake, multiple inaccuracies are evidence of 'a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by § 727(a)(4)(A).'"); Beshears, 196 B.R. at 476.

In this case, Keith Thomas did not merely forget to list one or two tax refunds. He simply ignored the requirement in paragraph 1, paragraph 2 and paragraph 10 of the statement of financial affairs which require the listing of all income received within two years of the petition date and all property transferred within two years preceding the commencement of the case. His testimony is

that he did not believe any of the monies received, either through the settlement or from Papiotrade, were income, and therefore they did not need to be listed nor did he need to amend his tax returns to reflect the receipt. However, the settlement document itself and the complaint upon which it is based both refer to income for services rendered. Whatever his reasoning at the time, his failure to list the settlement amounts and the $90,000 from Papiotrade shows a reckless indifference to the truth.

The transfers out of the Wells Fargo account, even if they were to his entities, were not in the ordinary course of his business or financial affairs. There is no documentation presented by Keith Thomas from his personal records or from the business records of his entities which support an ordinary course of business transaction. There are no promissory notes, no shares of stock, no agreements of any sort. He had an obligation to report everything and he failed to do so. As a result, he shall be denied a discharge.

§727(a)(2), (5), (6) and (7) Issues

No evidence was presented on any of these subsections. No discussion is necessary.

Conclusion

Judgment shall be entered in favor of the bank denying a discharge to Keith Thomas. Judgment will be entered in favor of Keith and Patricia Thomas on all other counts. Separate judgment entries will be filed.

DATED:    September 21, 2009

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
　　*James B. Cavanagh
　　Matthew S. McKeever
　　U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.